IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESULTS BYIQ, LLC, | ) Case No. C 11-0550 SC </br> ) </br> ) ORDER GRANTING DEFENDANTS' </br> ) MOTION TO SET ASIDE DEFAULT </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) |
| Plaintiff, | |
| v. | |
| NETCAPITAL.COM, LLC, NETWIRE, INC., NETMOVIES, INC., and DOES 1 - 20, inclusive, | |
| Defendants. | |

## I.  INTRODUCTION

On March 17, 2011, the clerk of the Court entered default against Defendants NetCapital.com, LLC, NetMovies, Inc. ("NetMovies"), and NetWire, Inc. ("NetWire") (collectively, "Defendants"), and in favor of Plaintiff Results ByIQ ("Plaintiff").  ECF No. 9 ("Entry of Default").  Defendants now move to set aside the Entry of Default on the ground their failure to respond to Plaintiff's action was the result of mistake and excusable neglect.  ECF No. 42 ("Mot.").  The motion is fully briefed.  ECF Nos. 47 ("Opp'n"), 48 ("Reply").  Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for disposition without oral argument.  As detailed below, Defendants' Motion is GRANTED.

## II. BACKGROUND

Plaintiff filed a Complaint for wire fraud against Defendants on February 7, 2011 and a First Amended Complaint ("FAC") on February 10, 2011. ECF Nos. 1 ("Compl."), 4 ("FAC"). The FAC alleges that Defendants are incorporated in Delaware with a principal place of business at 165 Nantasket Beach Avenue, Hull, Massachusetts ("165 Nantasket"). FAC ¶¶ 4, 7-9. All three Defendants appear to be affiliated. See id. Ex. B ("Consulting Agreement") ¶ 1. According to the FAC, the Defendants are the alter-egos of John Fanning ("Fanning").[1] Id. ¶ 13. Fanning has declared that he is a founder, manager, and officer of Defendants. ECF No. 18-1 ¶ 1.

Plaintiff alleges that, pursuant to its Consulting Agreement with Defendants and at the insistence of Fanning, Plaintiff provided Defendants with hundreds of hours of services valued at tens of thousands of dollars. FAC ¶¶ 21, 23-24. According to the Consulting Agreement, which was signed by Defendants on October 27, 2006, Defendants' address is 165 Nantasket. Id. Ex. A ("Consulting Agreement"). The Consulting Agreement also provides:

> All notices under this Agreement shall be in writing, and shall be deemed given when personally delivered, sent by confirmed telecopy or other electronic means, or ten (10) days after being sent by prepaid certified or registered U.S. mail to the address of the party to be noticed as set forth herein or such other address as such party last provided to the other by written notice.

Id. ¶ 7.

Plaintiff alleges that Defendants failed to compensate

---
[1] Fanning was originally named as a Defendant in the Complaint and FAC. Plaintiff voluntarily dismissed its claims against Fanning without prejudice on March 20, 2011. ECF. No 10.

2

Plaintiff for services rendered under the Consulting Agreement. To recover, Plaintiff brought claims for violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961 et seq., fraud in the inducement, fraudulent conveyance, breach of contract, account stated, and open book account against Defendants. FAC ¶¶ 46-84.

Plaintiff, through a licensed process server, served a copy of the Summons, Complaint, and FAC on Tom Carmody ("Carmody") at 165 Nantasket on February 15, 2011. ECF No. 8 ("POS"). The process server declares that Carmody "was identified as an officer qualified by law to accept service on behalf of [Defendants]." Id. The process server also declares that 165 Nantasket is the principal office of NetWire and NetMovies in Massachusetts, as registered with the Massachusetts Secretary of State. Id.

After Defendants failed to answer or otherwise respond to this action, the clerk of the Court entered default on March 17, 2011. Entry of Default. On June 20, 2011, Plaintiff moved for default judgment in the amount of $259,131.05. ECF No. 17 at 2. Approximately two weeks later, Defendants moved to dismiss for lack of proper service through their counsel of record, William W. Bunting III ("Bunting"). ECF No. 18. At that time, Defendants did not move to set aside the default.

In an Order dated October 18, 2011, the Court denied both Plaintiff's motion for default judgment and Defendants' motion to dismiss. ECF No. 25 ("Oct. 18 Order"). The Court found that Plaintiff had met its burden of demonstrating effective service since Defendants were served at the address specified by the Consulting Agreement and Defendants offered no evidence to indicate

that they had notified Plaintiff of a change of address in the intervening years. Id. at 7-8.

On December 30, 2011, Bunting moved to withdraw as counsel for Defendants. ECF No. 27. In a declaration filed concurrently with the motion, Bunting explained that he wished to withdraw because Defendants had failed to pay their invoices or respond to his communications. ECF No. 27-2 ("Bunting Decl.") ¶¶ 3-4. The Court held a hearing on the matter on March 30, 2012, at which time Garet Damon O'Keefe ("O'Keefe") requested to be substituted as counsel for Defendants. ECF No. 39. The Court granted Bunting's motion to withdraw and O'Keefe's request to replace him. Id.

Soon after O'Keefe was appointed as Defendants' counsel of record, he filed the instant motion to aside the entry of default, as well as affidavits by Carmody and Fanning that attempt to explain Defendants' delay in responding to Plaintiff's lawsuit. ECF Nos. 43 ("Fanning Aff."), 44 ("Carmody Aff."). Carmody, an attorney, states he is not an officer or employee of Defendants, but he shares office space with them at 165 Nantasket.[2] Carmody Aff. ¶¶ 1-2. Carmody states that, on February 15, 2011, at 165 Nantasket, a gentleman, presumably Plaintiff's process server, handed him several envelopes, presumably Plaintiff's service of process. Id. ¶ 3. Carmody states that he placed those envelopes in a junk mail pile "which is sometimes forwarded or delivered to Netcapital.com LLC upon request or otherwise discarded." Id. ¶ 4. Fanning indicates that he never received these envelopes, declaring

---

[2] Specifically, Carmody states that his office is located at 165 Nantasket Boulevard, Hull, Massachusetts. Carmody Decl. ¶ 1. The Consulting Agreement identifies Defendants' address as 165 Nantasket Beach Avenue, Hull, Massachusetts. Neither party addresses this inconsistency.

4

that he did not learn about this lawsuit until late April or early May 2011 and that he contacted Bunting sometime thereafter. Fanning Aff. ¶¶ 7-9. Fanning also states that, after the Court's October 18 Order, Bunting "failed and refused to file a motion to set aside entry of the default, even though he was duty bound to do so . . . ." Id. ¶¶ 11-12.

There are several holes in Defendants' account. It is unclear why Defendants designated 165 Nantasket as their address for service of process when they had no one at that address to accept service of process on their behalf. It is unclear why Carmody, an attorney, failed to affirmatively inform the process server that he was not authorized to accept service of process on behalf of Defendants. It is unclear why Carmody placed the package from the process server in a junk mail pile. It is unclear why Defendants ceased communicating with and compensating Bunting after the Court entered its October 18 Order. Finally, it is unclear why Bunting was "duty bound" to file a motion to set aside the default when his clients refused to cooperate with him.

**III. DISCUSSION**

"[J]udgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984). "The court may set aside entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). "To determine good cause, a court must consider[ ] three factors: (1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3)

5

whether reopening the default judgment would prejudice the other party." United States v. Signed Pers. Check No. 730 of Yubran S. Mesle ("Mesle"), 615 F.3d 1085, 1091 (9th Cir. 2010) (internal quotations omitted). "This standard . . . is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." Id. As detailed below, all three factors favor setting aside the entry of default here.

### A. Culpable Conduct

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." TCI Grp. Life Ins. Plan v. Knoebber, 244 F.3d 691, 697 (9th Cir. 2001) (internal quotations omitted). "Neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process is not 'intentional' under our default cases, and is therefore not necessarily . . . culpable or inexcusable." Id. In contrast, a defendant's conduct may be considered culpable "where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." Id. at 698.

The Court finds that Defendants' failure to timely respond to this lawsuit does not rise to the level of culpable conduct. There is no indication that Defendants received notice of this lawsuit until after default had been entered. Carmody effectively accepted service on behalf of Defendants and then deposited the pertinent documents into a junk mail box. See POS; Carmody Aff. ¶ 3-4. From

6

there, the documents were likely discarded. See Carmody Aff. ¶¶ 4-5. The fact that these documents never reached Defendants was not Plaintiff's fault. Defendants were served at the address they specified in the Consulting Agreement and Carmody, who effectively accepted service on behalf of Defendants, offered no indication that Defendants no longer resided at that address. Defendants should have either notified Plaintiff of a change of address or established a system that kept documents served on 165 Nantasket out of the junk mail box. Nevertheless, the Court cannot conclude that Defendants intended to take advantage of Plaintiff or interfere with judicial decisionmaking. Defendants' failure to notify Plaintiff of a change of address could have merely been an administrative oversight.

Plaintiff argues that Defendants engaged in culpable conduct by failing to respond to the communications of their attorney, Bunting, after the Court's October 18 Order. Opp'n at 2-3. This argument lacks merit. The pertinent inquiry is whether Defendants engaged in culpable conduct which led to the default. See Mesle, 615 F.3d at 1091. The conduct targeted by Plaintiff occurred months after the default was entered and, therefore, could not have led to the default. Plaintiff may be arguing that Defendants' purportedly culpable conduct led them to file an untimely motion to set aside the default. However, Plaintiff cites no authority which would establish that the instant motion was filed too late.[3]

---

[3] Plaintiff also argues that "the instant motion is an untimely motion for reconsideration of the [October 18] ORDER." The Court disagrees. In the October 18 Order, the Court found that Plaintiff's service of process was proper. In the instant motion, Defendants do not argue otherwise. Instead, they merely contend

7

**B.  Meritorious Defense**

"A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense. . . .  But the burden on a party seeking to vacate a default judgment is not extraordinarily heavy."  TCI, 244 F.3d at 700.  "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense."  Mesle, 615 F.3d at 1094.

Here, Defendants have filed a Proposed Answer which sets forth denials of several key allegations in Plaintiff's complaint, fifteen affirmative defenses, and four counterclaims.[4]  Fanning Decl. Ex. A ("Proposed Answer").  Additionally, Fanning's Affidavit sets forth a number of facts which tend to support these denials and defenses.  Fanning Aff.  If Defendants' denials are true, then they may be able to prevail on the merits.  In light of the fact that the burden on Defendants is not particularly heavy here, the Court finds that Defendants' Proposed Answer and Fanning's Affidavit are sufficient to satisfy the meritorious defense requirement.

---

that their failure to respond to the Complaint in a timely manner was due to excusable neglect.

[4] The Court notes that many of Defendants' proposed affirmative defenses clearly lack merit.  For example, Defendants' first affirmative defense, failure to state a claim, is not a proper affirmative defense.  See Barnes v. AT & T Pension Ben. Plan-Nonbargained Program, 718 F. Supp. 2d 1167, 1174 (N.D. Cal. 2010).  Further, many of Defendants' proposed affirmative defenses amount to little more than labels and conclusions and, thus, fail to allege sufficient facts to place Plaintiff on notice of the underlying factual bases of the defense.  See Dion v. Fulton Friedman & Gullace LLP, 11-2727 SC, 2012 WL 160221, at *2 (N.D. Cal. Jan. 17, 2012). Nevertheless, the Court cannot conclude that Defendants' entire Proposed Answer lacks merit.

Plaintiff argues that the Court should disregard the Proposed Answer since Defendants have not presented any admissible evidence of a meritorious defense. Opp'n at 3. However, as noted above, Defendants were not required to present admissible evidence. On a motion to set aside the entry of default, factual allegations are sufficient. See Mesle, 615 F.3d at 1094. Plaintiff also takes issue with several of the factual and legal contentions set forth in Defendants' Proposed Answer. Opp'n at 4-6. The Court is unwilling to make a summary determination of these matters at this stage of the litigation, especially since it is unclear which facts are undisputed. Further, the Court finds that additional briefing on Plaintiff's RICO claims, which may entitle Plaintiff to treble damages, would serve the interests of justice.

Accordingly, the Court finds that Defendants have alleged sufficient facts to satisfy the meritorious defense requirement.

### C. Prejudice to Plaintiff

The final factor concerns whether setting aside the default would prejudice Plaintiff. Prejudice results where a plaintiff's ability to pursue its case would be hindered. TCI, 244 F.3d at 701. "[M]erely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting a default . . . ." Id. Here, Plaintiff does not identify any prejudice that would result in setting aside the default. Accordingly, the Court finds that the final factor has been satisfied.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants NetCapital.com, LLC, NetMovies, Inc., and NetWire, Inc.'s motion to

1 set aside the Entry of Default.  The default entered in favor of
2 Plaintiff Results ByIQ and against Defendants is hereby VACATED and
3 set aside.  Defendants shall file and serve their responsive
4 pleading within ten (10) days of this Order.  The Court hereby sets
5 a case management conference for August 31, 2012, at 10:00 a.m., in
6 Courtroom 1, 450 Golden Gate Avenue, San Francisco, California.
7 The parties shall file one joint case management statement seven
8 (7) days prior to the case management conference.

10    IT IS SO ORDERED.

12    Dated:   July 10, 2012              
13                                         UNITED STATES DISTRICT JUDGE