IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESULTS BYIQ LLC, | ) Case No. C 11-0550-SC |
| Plaintiff, | ) ORDER DENYING DEFENDANTS' |
| v. | ) MOTION FOR SUMMARY JUDGMENT ) AND MOTION TO CONTINUE ) TRIAL |
| NETCAPITAL.COM LLC, NETWIRE INC., NETMOVIES INC., and DOES 1-20, inclusive, | ) |
| Defendants. | ) |

## I. INTRODUCTION

Plaintiff Results ByIQ LLC ("Results ByIQ") brings this action against Defendants NetCapital.com LLC, Netwire Inc., and Netmovies Inc. (collectively "Defendants") for breach of contract and fraud in the inducement, among other things. ECF No. 4 ("Am. Compl."). The crux of Results ByIQ's Amended Complaint is that Results ByIQ performed work for Defendants pursuant to a written agreement and was never compensated for that work. Defendants now move for summary judgment on the grounds that (1) Results ByIQ lacks standing to bring this action and (2) Results ByIQ's claims are

time-barred. ECF No. 61 ("MSJ"). The Motion is fully briefed, ECF Nos. 72 ("Opp'n"), 76 ("Reply"), and appropriate for determination without oral argument per Civil Local Rule 7-1(b). Also before the Court is Defendants' motion to continue the trial in this matter from June 10, 2013 to sometime in July 2013. ECF No. 78 (Motion to Continue ("MTC")). For the reasons set forth below, both motions are DENIED.

## II. BACKGROUND

Plaintiff Results ByIQ alleges that non-party ByIQ LLC ("ByIQ") entered into a Consulting Agreement with Defendants NetCapital.com LLC, Netwire Inc., and NetMovies Inc. in or around October 25, 2006. Am. Compl. ¶ 19.[1] Paul Charlton signed the agreement on behalf of ByIQ, and John Fanning signed on behalf of NetCapital.com. Id. Ex. B. Between October 2006 and early 2008, ByIQ allegedly performed work pursuant to the Consulting Agreement. Id. ¶¶ 21-24.

On November 30, 2006, ByIQ submitted an invoice to "NetCapital, LLC" for $10,500, which was due on that same date. Id. Ex. D. In November 2007 and December 2008, Mr. Fanning and his chief operating officer allegedly acknowledged and affirmed Defendants' outstanding debt for services provided by ByIQ and requested that ByIQ perform additional services. Id. ¶¶ 22, 28. In December 2010, Mr. Charlton emailed Mr. Fanning to request that

---

[1] Though this is a motion for summary judgment, the parties briefed it as if it were a motion for judgment on the pleadings. For example, Defendants' statement of facts, ECF No. 62, primarily references Results ByIQ's original complaint and the documents attached thereto.

2

1  Defendants pay their outstanding bills. Id. Ex. H. Mr. Fanning
2  responded: "This is a netmovies bill. I am not sure how this would
3  be handled." Id. Ex. I. In January 2011, Mr. Charlton again
4  emailed Mr. Fanning to demand payment. Id. Ex. K. Results ByIQ
5  alleges that Mr. Fanning did not respond. Id. ¶¶ 35-36.
6      In a declaration filed with the Court, Mr. Charlton claims
7  that he and several other members of ByIQ elected to cash out their
8  interests in ByIQ and wind down the business in 2009 or 2010. ECF
9  No. 74 ("Charlton Decl.") ¶ 5. Mr. Charlton also claims that he
10 formed Plaintiff Results ByIQ in or around 2010 and that Results
11 ByIQ became the successor-in-interest to ByIQ and the assignee of
12 ByIQ's claims and causes of action. Id. ¶ 6. This transaction was
13 purportedly memorialized in a written agreement, but Mr. Charlton
14 has yet to locate a copy of that agreement. Charlton Decl. ¶ 6.
15     Results ByIQ filed this action on February 7, 2011 and amended
16 its Complaint three days later. The Amended Complaint asserts
17 causes of action for (1) violation of the Racketeer and Corrupt
18 Organizations Act, 18 U.S.C. § 1964; (2) fraud in the inducement;
19 (3) fraudulent conveyance; (4) breach of contract; (5) account
20 stated; and (6) open book account.

22 **III. LEGAL STANDARD**
23     Entry of summary judgment is proper "if the movant shows that
24 there is no genuine dispute as to any material fact and the movant
25 is entitled to judgment as a matter of law." Fed. R. Civ. P.
26 56(a). Summary judgment should be granted if the evidence would
27 require a directed verdict for the moving party. Anderson v.
28 Liberty Lobby, Inc., 477 U.S. 242, 251 (1986). Thus, "Rule 56[]

mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

**IV. DISCUSSION**

Defendants move to dismiss on standing and statute of limitations grounds.[2] The Court addresses each of these arguments below. Additionally, the Court addresses Defendants' motion to continue the trial.

**A. Standing**

Defendants argue that Results ByIQ lacks standing because it is not the real party in interest to this suit. MSJ at 2-3. Specifically, Defendants contend that all of Results ByIQ's claims are predicated on injuries to ByIQ. Id. Results ByIQ responds that it has standing as successor-in-interest to ByIQ and assignee of ByIQ's claims and causes of action. Opp'n at 4. Mr. Charlton has filed a declaration with the Court asserting that Results ByIQ

---

[2] Defendants also move to dismiss Results ByIQ's wire fraud claim on the ground that 18 U.S.C. § 1343 does not grant a private right of action. The fundamental flaw in this argument is that Results ByIQ is no longer asserting a claim for wire fraud. The claim was asserted in Results ByIQ's original complaint, but abandoned when the complaint was amended. Compare ECF No. 1 ("Compl.") with Am. Compl.

4

is ByIQ's successor-in-interest, but Results ByIQ has yet to produce the legal document memorializing this arrangement. Defendants assert that Results ByIQ's inability to produce this document warrants summary judgment since it amounts to a complete failure of proof concerning an essential element of Results ByIQ's case. Reply at 4.

In the absence of a legal document memorializing the assignment of ByIQ's rights, the Court is left with Mr. Fanning's representations concerning the existence and terms of the assignment. The Court cannot dismiss Mr. Fanning's declaration without making a credibility determination, which would be inappropriate at this state of the litigation. Further, Rule 56(d) provides that the Court may deny a motion for judgment if a nonmovant shows, "for specified reasons, that it cannot present facts essential to justify its opposition." Here, the declaration of Results ByIQ's counsel indicates that Defendants first raised the issue of Results ByIQ's standing in the instant motion and that no discovery has been taken on this matter. See ECF No. 73 ("Battista Decl.") ¶¶ 4-5.

Accordingly, the Court declines to grant summary judgment on standing grounds.

**B.** **Statute of Limitations**

Under California law, the statute of limitations for an action upon any contract and an action for relief on the ground of fraud are four years and three years, respectively. Cal. Civ. Proc. Code § 337, 338(d). Defendants argue that Results ByIQ's contract claims are time-barred because Results ByIQ's first invoice was due on November 30, 2006 and this action was not filed

until February 7, 2011. MSJ at 4. Defendants also contend that Results ByIQ's claim for fraud in the inducement is time-barred because it accrued on October 25, 2006, the date on which ByIQ and Defendants entered into the Consulting Agreement.[3] Id. at 4-5.

With respect to the contract claims, Results ByIQ responds that triable issues of fact exist as to when the November 30, 2006 invoice was received by Defendants and when payment was expected. Opp'n at 5. Results ByIQ points out that the invoice was sent by U.S. Mail on November 30, 2006, meaning that Defendants would have received it sometime after the November 30, 2006 due date. Id. (citing Battista Decl. Ex. 2 at 15-16). Results ByIQ further argues that no reasonable business person expects that an invoice will be paid the instant that it is received. Id.

Under California Code of Civil Procedure section 337, the statute of limitations for an action to recover on an "account stated" based on an account of more than one item does not begin to run until the date of the last item. Likewise, the statute of limitations for a "book account" begins as of the last entry of the book account.[4] R.N.C. Inc. v. Tsegeletos, 231 Cal. App. 3d 967, 971-72 (Cal. Ct. App. 1991). A book account does not remain open indefinitely for the purposes of calculating the statute of limitations. Id. at 972. "[T]he 'open' or 'closed' nature of a

---

[3] Although Defendants suggest that all of Results ByIQ's fraud claims are time-barred, they do not directly address Results ByIQ's claim for fraudulent conveyance. Accordingly, the Court declines to find that the fraudulent conveyance claim is time-barred.

[4] A book account is defined as "a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation . . . [that] is kept in a reasonably permanent form and manner." Cal. Code Civ. Proc. § 337a.

6

book account turns not on the account balance per se, but on the parties' expectations of possible future transactions between them [on that account]." Id. (quoting Gross v. Recabaren, 206 Cal. App. 3d 771, 778 (Cal. Ct. App. 1988). "An open account results where the parties intend that the individual items of the account shall not be considered independently, but as a connected series of transactions, . . . and where . . . there is but one single and indivisible liability." Id. (quoting 1 Am. Jur. 2d Accounts and Accounting, § 4 at 373-74).

In this case, the Court cannot find that Results ByIQ's contract claims are time-barred based on the evidence before it. As an initial matter, Defendants have failed to address whether their account with ByIQ remained open or closed after November 30, 2006, and thus have failed to carry their burden. Further, the facts before the Court suggest that the account remained open well after November 30, 2006. According to facts alleged in the Complaint, which Defendants do not appear to dispute, ByIQ continued to render services under the Consulting Agreement through sometime in early 2008. Am. Compl. ¶¶ 21-24. Further, as late as December 2008, Defendants and ByIQ had conversations about ByIQ performing additional work for Defendants. See id. ¶ 29.

As to the fraud in the inducement claim, Results ByIQ argues that it did not discover the fraud until at least December 2010. Results ByIQ points out that it has alleged that Defendants acknowledged their debt in November 2007 and December 2008 and requested additional service be performed under the Consulting Agreement. Opp'n at 7. Results ByIQ further argues that the first indication that Defendants had no intention of paying their bills

7

came on December 7, 2010, when Mr. Fanning responded to Mr. Charlton's demand for payment by saying: "This is a netmovies bill. I am not sure how this would be handled." Id.

Under California law, the discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action, until, that is, he at least suspects, or has reason to suspect, a factual basis for its elements." Norgart v. Upjohn Co., 21 Cal. 4th 383, 389 (Cal. 1999). A plaintiff has reason to discover when he has "notice or information of circumstances to put a reasonable person on inquiry." Id. at 398 (internal quotations omitted). Defendants argue that, based on the facts alleged in the Amended Complaint, Results ByIQ should have discovered the alleged fraud by December 2007. Reply at 9. It is not altogether clear why, but Defendants appear to be relying on Results ByIQ's allegation that it had provided $41,550 in services by December 2007.

The Court finds that the undisputed evidence does not support summary judgment on Results ByIQ's fraud in the inducement claim. In fact, there is little evidence before the Court other than Results ByIQ's own pleading. That pleading suggests that ByIQ repeatedly demanded payment from Defendants from November 2006 through January 2011 and that, during this period, Defendants never denied their payment obligations or otherwise indicated that they would refuse to pay. Defendants do not appear to dispute any of these facts. In this case, determining exactly when a reasonable person would have discovered that Defendants had no intention of fulfilling their alleged obligations is matter of fact best left to the jury.

For these reasons, and the reasons set forth in Section IV.B, Defendants' motion for summary judgment is DENIED.

### C. Motion to Continue the Trial

The trial in this matter is currently set for June 10, 2013. On May 1, 2013, Defendants moved to continue the trial to sometime in July. Results ByIQ has opposed the motion. ECF No. 80.

Defendants argue that a continuance is warranted because justice requires that they be given an opportunity to conduct discovery on the assignment agreement discussed in Section IV.A, supra. MTC at 5-6. However, it is unclear why Defendants have waited until now to conduct discovery on this purportedly central issue. Defendants also argue that Mr. Fanning will be unavailable to be deposed by Results ByIQ until June because his home city of Boston is on "lockdown." Id. at 3-4. While sensitive to the recent tragedy in Boston, the Court takes judicial notice of the fact that Boston has not been on lockdown for some time. In any event, Results ByIQ has indicated that it is prepared to move forward with the trial as scheduled. Finally, Defendants contend that their new counsel, Maria Crimi Speth, is unavailable due to scheduling conflicts. MTC at 3. As Results ByIQ points out, Ms. Speth is not counsel of record in this action, is not admitted to practice law in California, and has yet to file an application for pro hac vice admission. Further, there is no indication that Defendants' current counsel is unavailable for trial or intends to withdraw as counsel of record.[5]

---

[5] Defendants also contend that there should be more time between the hearing on their motion for summary judgment and the due date for the parties' pre-trial briefs. This argument is also unpersuasive. Defendants have been aware of the trial date (and

9

1    In sum, the motion to continue the trial is DENIED.  This case
2 has been pending before the Court since February 7, 2011, and the
3 current trial date has been set since August 31, 2012.  ECF No. 53.
4 The Court is not inclined to grant a continuance at this late date.

## V.    CONCLUSION

For the foregoing reasons, Defendants NetCapital.Com LLC, Netwire Inc., and Netmovies Inc.'s motion for summary judgment is DENIED.  Defendants' motion to continue the trial is also DENIED.

IT IS SO ORDERED.

Dated:  May 7, 2013

_____
UNITED STATES DISTRICT JUDGE

---

the possibility of required pre-trial filings) for several months and, in spite of this, chose to file their motion for summary judgment after the last day for motions to be filed in this matter. See ECF No. 64.

10