**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| RESULTS BYIQ LLC,<br><br>             Plaintiff,<br><br>    v.<br><br>NETCAPITAL.COM LLC, NETWIRE<br>INC., NETMOVIES INC., and DOES<br>1-20,<br><br>             Defendants. | Case No. C 11-0550 SC<br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART MOTION FOR<br>JUDGMENT AS A MATTER OF LAW AND<br><u>DENYING MOTION FOR REMITTITUR</u> |

## I.   <u>INTRODUCTION</u>

Now before the Court is Defendants Netcapital.com LLC, Netwire Inc., and Netmovies LLC's ("Defendants") motions for judgment as a matter of law and, alternatively, for remittitur.  ECF No. 133 ("Mot.").  The motion is fully briefed, ECF Nos. 147 ("Opp'n"), 151 ("Reply"), and appropriate for decision without oral argument, Civ. L.R. 7-1(b).  For the reasons explained below, Defendants' motion for judgment as a matter of law is GRANTED IN PART and DENIED IN PART, and the motion for remittitur is DENIED.

///

**United States District Court**
For the Northern District of California

**II.   BACKGROUND**

The Court held a jury trial in this case from June 10 to June 12, 2013.  At trial, Plaintiff Results ByIQ LLC ("Plaintiff") asserted claims for fraud in the inducement (also called "false promise"), breach of contract, account stated, and open book account against Defendants.  ECF No. 4 ("FAC").  Defendants counterclaimed for breach of contract.

The Court's May 2013 Order on Defendants' motion for summary judgment laid out the basic facts of this case.  Results ByIQ LLC v. NetCapital.com LLC, No. C 11-0550 SC, 2013 WL 2436333 (N.D. Cal. May 7, 2013) ("May Order").  Defendants hired Plaintiff's predecessor company, ByIQ LLC ("ByIQ"), to do some programming and consulting work for Defendants around October 2006.  Defendants never paid Plaintiff for all of its work, so Plaintiff sued to get the money it claims Defendants owed.  Paul Charlton was the principal of both ByIQ and Results ByIQ.  Defendants' main argument in response to these allegations was essentially that ByIQ did not validly assign its rights to Plaintiff, so Plaintiff had no standing to sue.  The main factual dispute at issue in the May Order was that Plaintiff had not located its copy of the assignment agreement that purportedly named Plaintiff as ByIQ's successor in interest.  See May Order at *2.  By trial, Plaintiff had found the signed agreement.

Before trial, Plaintiff made several motions in limine: (1) to exclude mention of Mr. Charlton's marital history; (2) to exclude mention of Mr. Charlton's bankruptcy; (3) to exclude mentions of Mr. Charlton's alleged mental state; and (4) to exclude testimony of Mr. Charlton's ex-wife.  ECF No. 111.  Defendant challenged

2

**United States District Court**
For the Northern District of California

1  motions (1), (2), and (4), arguing respectively that: evidence of
2  Mr. Charlton's divorce proceedings showed that ByIQ did not timely
3  provide its services to Defendants, thereby breaching their
4  agreement; Mr. Charlton's bankruptcy preoccupied him from working
5  on his responsibilities under the agreement, also rendering ByIQ in
6  breach of contract; and Mr. Charlton's ex-wife's testimony would
7  show that Mr. Charlton had engaged in patterns of fraud.  ECF No.
8  112.  The Court ruled that evidence of Mr. Charlton's divorce
9  proceedings could enter, but evidence of his bankruptcy proceedings
10  and his ex-wife's testimony would be excluded, since they were too
11  prejudicial relative to the reason for which Defendants planned to
12  introduce them.  The Court noted instead that Defendants could
13  indicate that Mr. Charlton had been involved in a complex legal
14  proceeding that took up much of his time.

15      At trial, Plaintiff presented two witnesses: Charlton and
16  former ByIQ LLC employee Michael Butler.  Defendants put on no
17  witnesses of their own, but they presented portions of their
18  representative John Fanning's video deposition, and Defendants'
19  counsel cross-examined Mr. Charlton and Mr. Butler.  The parties
20  also entered forty-three exhibits into evidence, the majority of
21  them invoices and emails concerning Plaintiff's consulting work and
22  Defendants' avoidance of payment.  (Plaintiff showed at trial that
23  Defendants had falsified one of the emails they used to support
24  their case.)  After Plaintiff rested at trial, Defendants orally
25  moved for judgment as a matter of law under Federal Rule of Civil
26  Procedure 50(a).  Defendants made two arguments in support of that
27  motion.  First, they claimed that under the bankruptcy statute 11
28  U.S.C. § 1306, Mr. Charlton's ownership interest in ByIQ was held

United States District Court

For the Northern District of California

by the bankruptcy trustee at the time of the alleged assignment, not by Mr. Charlton, thereby voiding his transfer of rights from ByIQ to Plaintiff.  Second, Defendants asserted that under Delaware corporate law, wound-down companies must make provisions to pay all debts and make provisions to pay unknown claims before they transfer any assets.  According to Defendants, Mr. Charlton did not do so, thereby voiding his assignment under Delaware law.

The jury deliberated for several hours between June 12 and June 13.  It found, in relevant part, that ByIQ had validly assigned its rights to Plaintiff, that Plaintiff prevailed on both its breach of contract and false promise claims, and that Plaintiff was entitled to punitive damages against Defendant NetCapital.com LLC.  ECF No. 124 ("Verdict").  It also found for Plaintiff on Defendants' counterclaim for breach of contract.  It awarded Plaintiff $167,050 in damages for its false promise claim, and $334,00 in punitive damages.  Id.

Now Defendants move for a renewed judgment as a matter of law under Rule 50(b).  They argue that Plaintiff lacks standing because (1) under bankruptcy law, Mr. Charlton had no authority to transfer his membership stake in ByIQ to Plaintiff because it was property of the bankruptcy trustee, and because Delaware law prohibited non-members from assigning an LLC's assets; (2) Plaintiff did not prove that Mr. Charlton had authority to make the assignment; (3) the assignment was void under Delaware law, as described above; and (4) the assignment is void per the consulting agreement's terms.  Mot. at 3-7.

Defendants also argue that they are entitled to judgment as a matter of law because (1) no reasonable jury could have determined

**United States District Court**
For the Northern District of California

1   that Plaintiff met its burden to prove a false promises claim; (2)

2   the false promises claim was barred by the statute of limitations;

3   and (3) Plaintiff did not allege a false promises claim until trial

4   (its complaint pled fraudulent inducement).  Id. at 7-11.

5       Defendants additionally request judgment as a matter of law on

6   Plaintiff's punitive damage award, because (1) the false promises

7   claim was improper; (2) no reasonable jury could have determined

8   that there was clear and convincing evidence of malice, oppression,

9   or fraud; and (3) Plaintiff produced no evidence of Defendant's

10  financial condition.  Id. at 11-14.

11      Alternatively, Defendants ask for the Court to remit damages

12  to $31,500 or to hold a new trial on damages.  Id. at 2, 14.  In

13  short, they claim that the evidence at trial could not have led the

14  jury to an award of $167,050 in compensatory damages and $334,100

15  in punitive damages.  Id.  They also claim that the jury was

16  incorrectly instructed on false promises damages, that the amount

17  of punitive damages was unreasonable, and that one of the invoices

18  serving as an evidentiary basis for damages is barred by the

19  statute of limitations.  Id. at 14-20.

20

21  **III.**   **LEGAL STANDARD**

22      **A.**   **Rule 50**

23      Rule 50 requires a court to render a judgment as a matter of

24  law where "a party has been fully heard on an issue during a jury

25  trial and the court finds that a reasonable jury would not have a

26  legally sufficient evidentiary basis to find for the party on that

27  issue . . . ."  Fed. R. Civ. P. 50(a)(1).  "The standard for

28  judgment as a matter of law under Rule 50 mirrors the standard for

**United States District Court**
For the Northern District of California

summary judgment under Rule 56." <u>Reeves v. Sanderson Plumbing</u>
<u>Prods., Inc.</u>, 530 U.S. 133, 150 (2000).  Accordingly, the court
must review all of the evidence in the record, drawing all
reasonable inferences in favor of the nonmoving party but making no
credibility determinations or weighing any evidence.  <u>Id.</u>

A Rule 50(b) motion is a renewed Rule 50(a) motion, limited to
the grounds asserted in the pre-deliberation Rule 50(a) motion.
<u>EEOC v. Go Daddy Software, Inc.</u>, 581 F.3d 951, 961 (9th Cir. 2009).
Thus, a party cannot properly "raise arguments in its post-trial
motion for judgment as a matter of law under Rule 50(b) that it did
not raise in its pre-verdict Rule 50(a) motion." <u>Freund v. Nycomed</u>
<u>Amersham</u>, 347 F.3d 752, 761 (9th Cir. 2003).  Ambiguous or inartful
motions under Rule 50(a) can satisfy Rule 50(b), but absent such a
liberal interpretation, "the rule is a harsh one." <u>Go Daddy</u>, 581
F.3d at 961 (quoting <u>Nat'l Indus., Inc. v. Sharon Steel Corp.</u>, 781
F.2d 1545, 1549 (11th Cir. 1986)).

    **B.**   **<u>Remittitur or New Trial</u>**

When the court, after viewing the evidence concerning damages
in a light most favorable to the prevailing party, determines that
the damages award is excessive, it has two alternatives. It may
grant defendant's motion for a new trial or deny the motion,
conditioned upon the prevailing party accepting a remittitur.
<u>Fenner v. Dependable Trucking Co., Inc.</u>, 716 F.2d 598, 603 (9th
Cir. 1983).  The prevailing party is given the option of either
submitting to a new trial or of accepting a reduced amount of
damage which the court considers justified.  <u>Id.</u>
///
///

6

**IV.   DISCUSSION**

    **A.   Rule 50(b)**

    Defendants' Rule 50(b) motion suffers because of its procedural posture.  Most of Defendants' arguments should have been made on a motion for summary judgment: they are new arguments that are inappropriate for a Rule 50(b) motion because they were not made at trial.  Defendants only made a Rule 50(a) motion as to 11 U.S.C. § 1306 and Delaware corporate law.  Other arguments are either forbidden or held to a much stricter standard, as noted below.  Rule 50(b) is harsh, and for a reason: Defendants had ample opportunities to raise these arguments and submit them to the Court in summary judgment, to the jury, or in a proper Rule 50(a) motion.

    First, as to Defendants' bankruptcy argument, Defendants admit that the statute they cite concerns only Chapter 13 bankruptcy, which is not relevant to this case.  Reply at 3 n.1.  Defendants raise assorted other bankruptcy-related arguments, but these fail because they are new arguments that should have been asserted at summary judgment or in a Rule 50(a) motion.  Freund, 347 F.2d at 761.  Defendants also attempt to argue that the Court erred in denying Defendants' attempts to introduce bankruptcy evidence, but in response to Plaintiff's motion in limine, Defendants stated that they wanted to introduce the evidence to show that Mr. Charlton had no time to work on his contractual obligations.  The Court declines to entertain wholly new legal theories now.  This includes Defendants' theory that Mr. Charlton's bankruptcy renders Plaintiff without standing under Delaware Code Section 18-304.  Defendants' motion for judgment as a matter of law based on bankruptcy theories is DENIED.

**United States District Court**
For the Northern District of California

1    Second, Defendants cite Section 18-801 of the Delaware Limited

2    Liability Act in arguing that the jury could not possibly have

3    found for Plaintiff, since as a matter of law Plaintiff could not

4    have standing due to the effects of that statute.  Section 18-801

5    concerns the winding-up of a limited liability company like ByIQ.

6    It provides that a wound-down LLC must distribute its assets in

7    this order:

8              (1) To creditors . . . ;
9              (2) . . . to members and former members in
               satisfaction    of    liabilities    for
               distributions; and
10             (3) . . . to members first for the return of
               their contributions and second respecting
11             their limited liability company interests,
               in the proportions in which the members
12             share in distributions.

13   Section 18-801 also provides that a dissolved LLC:

14             (1) Shall pay or make reasonable provision
               to pay all claims and obligations, including
15             all contingent, conditional or unmatured
               contractual claims, known to the limited
16             liability company;

17             * * *

18             (3) Shall make such provision as will be
               reasonably likely to be sufficient to
19             provide compensation for claims that have
               not been made known to the limited liability
20             company or that have not arisen but that,
               based on facts known to the limited
21             liability company, are likely to arise or to
               become known to the limited liability
22             company within 10 years after the date of
               dissolution.
23

24   The Court instructed the jury on Section 18-801.  At trial,

25   Defendants introduced Defendants' Exhibit 9, indicating that ByIQ

26   owed $1,593 to the State of Delaware and therefore did not make

27   provision to pay that creditor.  Mot. at 7.  Defendants add that

28   Mr. Charlton admitted at trial that ByIQ made no provision to pay

**United States District Court**
For the Northern District of California

1   unknown claims that were likely to arise.  Id.  Since Delaware law

2   provides that assignments resulting in insolvency and preferring

3   one creditor to another are void, Defendants conclude that the only

4   possible conclusion at law, based on the evidence, would have been

5   to render Plaintiff's purported assignment agreement void.  Id.

6   (citing 10 Del. C. § 7387).  Plaintiff responds that Mr. Charlton

7   testified at trial that ByIQ had never been dissolved, and that he

8   was unaware that ByIQ was alleged to owe any money to the State of

9   Delaware until he saw an uncertified printout of a Delaware

10  corporate record for ByIQ.  Opp'n at 7-8.  Accordingly, Plaintiff

11  asserts that the jury had enough evidence to make a reasonable

12  conclusion that the assignment was valid under Delaware law.  Id.

13  at 8.

14       Plaintiff is correct.  Defendants presented their facts at

15  trial, Plaintiff presented theirs, and the jury made its decision

16  based on what all agree was a proper jury instruction on Section

17  18-801.  The Court finds that a reasonable jury would have a

18  legally sufficient evidentiary basis to find for Plaintiff on this

19  issue.  Defendants' motion for judgment as a matter of law based on

20  Section 18-801 is DENIED.

21       As for their other arguments, which are admittedly new,

22  Defendants argue that the Court may review Rule 50(b) motions on

23  grounds not asserted in a prior Rule 50(a) motion, but that in

24  doing so, the Court is "limited to reviewing the jury's verdict for

25  plain error, and should reverse only if such plain error would

26  result in a manifest miscarriage of justice."  Reply at 8 (citing

27  Go Daddy, 581 F.3d at 961-62).  "This exception . . . permits only

28  extraordinarily deferential review that is limited to whether there

**United States District Court**
For the Northern District of California

1   was any evidence to support the jury's verdict." <u>Go Daddy</u>, 581

2   F.3d at 961-62 (quoting <u>Yeti by Molly, Ltd. v. Deckers Outdoor</u>

3   <u>Corp.</u>, 259 F.3d 1101, 1109 (9th Cir. 2001)).

4        The Court finds that there was sufficient evidence to support

5   the jury's verdict on all points except punitive damages.  As to

6   that issue, Defendants' argument fits the narrow, strict, and

7   deferential exception for new theories advanced in Rule 50(b)

8   motions.  The jury's verdict on that point was plain error that

9   would result in a manifest miscarriage of justice.

10       Under California law, relevant here because Plaintiff was

11  awarded damages on state law claims, factfinders must look to three

12  factors to determine whether a punitive damages award is

13  appropriate: the nature of the defendants' acts, the amount of

14  compensatory damages awarded, and the defendants' financial

15  condition.  <u>Prof'l Seminar Consultants, Inc. v. Sino American Tech.</u>

16  <u>Exchange Council, Inc.</u>, 727 F.2d 1470, 1473 (9th Cir. 1984).

17  Without evidence of Defendants' financial condition, the Court

18  cannot make a fully informed determination of whether an award of

19  punitive damages is excessive.  <u>Adams v. Murakami</u>, 54 Cal. 3d 105,

20  111 (Cal. 1991) (en banc); <u>Morgan v. Woessner</u>, 997 F.2d 1244, 1259

21  (9th Cir. 1993) (California law requires the trier of fact to

22  consider evidence of defendants' financial worth in considering

23  appropriateness of punitive awards under California state law).

24  The point of punitive damages is to punish and deter, and proper

25  calibration of a punitive damages award, given a particular

26  defendant's financial situation, is crucial to fulfilling that

27  purpose.  <u>See</u> <u>Adams</u>, 54 Cal. 3d at 110.

28       Absent any evidence of NetCapital.com LLC's financial

United States District Court
For the Northern District of California

condition, a defect Plaintiff neither cured at trial nor clarified in its opposition brief, it is impossible for the Court to uphold the jury's verdict on this point.  There is simply no way for the jury to have found punitive damages warranted in this case.  The jury's findings were clear error.  The Court GRANTS Defendants' motion for judgment as a matter of law as to the punitive damages award.  The jury's punitive damages award is VACATED.

**B.   Remittitur or New Trial**

A motion for remittitur asks the Court to review the evidence on damages and decide whether the damages that the jury awarded were excessive.  If the Court finds that it was, the Court has the option of reducing the amount of damages to the maximum amount that the jury could reasonably have found based on the evidence.  However, the Court cannot simply substitute its own judgment for the jury's.  D&S Redi-Mix v. Sierra Redi-Mix & Contracting Co., 692 F.2d 1245, 1249 (9th Cir. 1982).

Defendants argue that the jury should not have calculated fraud damages at any rate other than the contract amount, and that the proper measure of damages for a false promise claim is the invoiced amount on the contract.  See Mot. at 15-16.  Accordingly, Defendants conclude that there was no way for the jury to increase the contracted hourly rate of $150 per hour to $603 per hour or $458.92 per hour, or for the jury to include hours that were never invoiced in their calculations.  Reply at 7.

Plaintiff responds that the evidence submitted at trial supports the jury's verdict, because the jury was shown all of Mr. Charlton's invoices to Defendants, and also heard testimony -- to which Defendants did not object -- concerning eighty-seven to

**United States District Court**
For the Northern District of California

1    ninety hours Mr. Charlton worked without invoicing Defendants, as

2    well as the 200 or so hours he expended trying to get Defendants to

3    pay him.  Opp'n at 13.  Plaintiff also notes that it submitted

4    unopposed evidence of Mr. Charlton's varying rates for different

5    projects, including a demonstrative exhibit of Mr. Charlton's

6    reliance damages and market rates.  <u>Id.</u> at 14.  Plaintiff concludes

7    that the compensatory damage award of $167,050 was reasonable.  <u>Id.</u>

8    Moreover, Plaintiff notes that Defendants' arguments about the

9    legal bases for Plaintiff's damages ignore the fact that California

10   law provides for "out-of-pocket" damages in fraud actions, which

11   include proximate reliance damages that are necessarily distinct

12   from contract damages.  <u>Id.</u> at 13-14.

13        In reply, Defendants submit a vague argument that Plaintiff's

14   case law was inapposite, that the jury could not have increased the

15   hourly rate for Mr. Charlton's fees, and that (as in their motion)

16   the only reasonable compensatory damages were contractual.  Reply

17   at 7.

18        Defendants' legal argument about the proper measure of damages

19   in a California fraud action is correct:

20

21              In pursuing a valid fraud action, a
            plaintiff advances the public interest in
22              punishing intentional misrepresentations and
            in deterring such misrepresentations in the
23              future.  Because of the extra measure of
            blameworthiness inhering in fraud, and
24              because in fraud cases we are not concerned
            about the need for 'predictability about the
25              cost of contractual relationships', fraud
            plaintiffs may recover 'out-of-pocket'
26              damages . . . .

27   <u>Lazar v. Super. Ct.</u>, 12 Cal. 4th 631, 646 (Cal. 1996) (citations

28   omitted); <u>see also</u> <u>In re First Alliance Mortg. Co.</u>, 471 F.3d 977,

United States District Court
For the Northern District of California

1001-02 (9th Cir. 2006) ("The proper measure of damages in fraud actions under California law . . . is 'out-of-pocket' damages."). Accordingly, out-of-pocket damages focus not on the promise -- the traditional contract measure of damages -- but on the damage caused by reliance on fraud, whether anticipated or not. Walker v. Signal Cos., Inc., 84 Cal. App. 3d 982, 995 (Cal. Ct. App. 1978) (citing Cal. Civ. Code § 3333 (California fraud damages statute)). In this context, the Court finds unconvincing Defendants' argument that market value is an inappropriate measure of out-of-pocket damages if property is not involved. See Mot. at 15-16. Market value is an objective measure of damages, and the jury here was convinced of Plaintiff's evidence on this point. See City Solutions, Inc. v. Clear Channel Commc'ns, 365 F.3d 835, 839 (9th Cir. 2004) (plaintiffs must persuade juries of damages with "reasonable certainty").

The Court therefore rejects Defendants' argument that the only measure of damages in this case was the invoiced amount, and also rejects Defendants' argument that the economic loss rule bars Plaintiff's damages. The economic loss rule prohibits tort claims that merely restate contractual obligations, but there is an exception to the rule where a defendant has breached a tort duty apart from the general duty not to act negligently. Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal. 4th 979, 989 (Cal. 2004). In this case, the jury found that Defendants had fraudulently induced Plaintiff to enter a contract via a false promise -- that is enough to avoid application of the economic loss rule. See id. at 990; see also Harris v. Atl. Richfield Co., 14 Cal. App. 4th 70, 78 (Cal. Ct. App. 1993) ("[W]hen one party

1   commits a fraud during the contract formation or performance, the

2   injured party may recover in contract and tort.").

3       As to the evidence, the Court does not find that the jury's

4   award was excessive or unfounded.  The jury heard Plaintiff's

5   testimony on billing rates, hours worked, and the range of possible

6   damages.  The jury then handed down its verdict and awarded

7   damages.  At no point did Defendants object to Plaintiff's evidence

8   on damages or request that the jury break out different components

9   of its damages award.  Further, the jury was properly instructed on

10  all relevant statutes of limitations but did not find that any

11  element of Plaintiff's case was time-barred.  Defendants' arguments

12  on these points fail.

13      The Court declines to disturb the jury's findings.

14  Defendants' motion for remittitur is DENIED as to the jury's

15  damages award.

16

17  **V.   <u>CONCLUSION</u>**

18      As explained above, Defendants NetCapital.com LLC, Netwire

19  Inc., and Netmovies LLC's motion for judgment as a matter of law is

20  GRANTED in part and DENIED in part, and the motion for remittitur

21  is DENIED.  They jury's award of punitive damages is VACATED.  The

22  judgment remains undisturbed in all other respects.

23

24      IT IS SO ORDERED.

25

26      Dated: September ___, 2013          _____

27                                          UNITED STATES DISTRICT JUDGE

28

14